UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAISY DEJESUS,<br>*o/b/o J. M. Z.* | ) | CIVIL NO. 4:21-CV-0486 |
| Plaintiff | ) | |
| | ) | (ARBUCKLE, M.J.) |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI,[1]<br>*Social Security Commissioner* | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

I.   INTRODUCTION

Plaintiff Daisy Dejesus, an adult individual who resides within the Middle District of Pennsylvania, filed this Social Security appeal on behalf of her minor granddaughter, J.M.Z. Ms. Dejesus seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying J.M.Z.'s application for supplemental security income under Title XVI of the Social Security

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3) (incorporating 42 U.S.C. §405(g) by reference).

This matter is before me upon consent of the parties, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.   BACKGROUND & PROCEDURAL HISTORY

On October 19, 2018, Plaintiff, on J.M.Z.'s behalf, protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 229; Doc. 13-6, p. 22).  In this application, Plaintiff alleges J.M.Z. became disabled as of January 1, 2013,[2] when she was five years old years old, due to the following conditions: ADHD, anxiety, and depression. (Admin. Tr. 226; Doc. 13-6, p. 19). Plaintiff alleges that the combination of these conditions affects J.M.Z.'s ability to read capital letters of the alphabet, to read capital letters and small letters, to read simple words, to make new friends, to generally get along with others, to generally get along with school teachers, to use a zipper, to button clothes, to tie

---

[2] Plaintiff amended the onset date at the administrative hearing. (Admin. Tr. 58; Doc. 13-2, p. 59).

shoelaces, to brush teeth, to choose clothes, to eat with a knife/fork/spoon, to pick up and put away toys, to hang up clothes, to help around the house, and to get to school on time. (Admin. Tr. 255-64; Doc. 13-7, pp. 14-23).

On January 15, 2019, J.M.Z.'s application was denied at the initial level of administrative review. (Admin. Tr. 121; Doc. 13-4, p. 21). On February 7, 2019, Plaintiff requested an administrative hearing. (Admin. Tr. 125; Doc. 13-4, p. 25).

On March 27, 2020, Plaintiff and J.M.Z. appeared and testified during a hearing before Administrative Law Judge Theodore Burock (the "ALJ"). (Admin. Tr. 31; Doc. 13-2, p. 32). On May 7, 2020, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 12; Doc. 13-2, p. 13). On June 10, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 207; Doc. 13-5, p. 36). Plaintiff did not submit new substantive information to the Appeals Council for review.

On February 2, 2021, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 13-2, p. 2).

On March 18, 2021, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and

regulations. (Doc. 1). As relief, Plaintiff requests that the Court reverse the Commissioner's decision, and to award Plaintiff benefits. (*Id.*).

On June 4, 2021, the Commissioner filed an Answer. (Doc. 12). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (*Id.*). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 13).

Plaintiff's Brief (Doc. 16), the Commissioner's Brief (Doc. 17) have been filed. Plaintiff did not file a Reply Brief. This matter is now ripe for decision.

III.    STANDARDS OF REVIEW

A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope

of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

      B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE THREE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant younger than the age of 18 ("child") shall be considered disabled under Title XVI of the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. Notwithstanding the foregoing, no child who engages in substantial gainful activity, as defined by the Social Security regulations, may be found disabled. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.906.

In determining whether a child is eligible for supplemental security income ("SSI") payments due to disability, the ALJ utilizes a three-step evaluation process. During this process, the ALJ must determine: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has a medically determinable, severe impairment; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 416.924. If the ALJ

concludes that the child is not disabled at any step of this this process, the analysis will end at that point. See 20 C.F.R. § 416.924.

As part of the analysis at step three, the adjudicator must determine whether a child's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Part B of 20 C.F.R. Part 404, Subpart P, Appendix 1. An impairment meets or medically equals a listed impairment if the impairment, or combination of impairments, and its symptoms are equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 416.926(a). If a child's impairment, or combination of impairments, does not meet or not medically equal a listing, the adjudicator will decide whether the impairment results in limitations that are functionally equivalent to a listed impairment. 20 C.F.R. § 416.926a(a). To determine whether a child's impairment is functionally equivalent to a listed impairment, ALJ must assess the child's level of functioning in six broad areas, or domains, intended to capture all of what a child can or cannot do. 20 C.F.R. § 416.926a(b)(1). These domains are: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and, (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

In order for an impairment, or combination of impairments, to functionally equal a listing, it must result in "marked" limitations in two of the above-listed

domains or an "extreme" limitation in one of the above-listed domains. 20 C.F.R. §
416.926a(d). A marked limitation in a domain is found where impairment interferes
seriously with the child's ability to independently initiate, sustain, or complete
activities. 20 C.F.R. § 416.926a(e)(2). A marked limitation is more than moderate
but less than extreme. *Id.* An extreme limitation in a domain is found where the
impairment interferes "very seriously" with the child's ability to independently
initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

IV.   DISCUSSION

A.   THE ALJ'S DECISION DENYING J.M.Z.'S APPLICATION

In his May 2020 decision, the ALJ evaluated Plaintiff's application at steps
one through step three of the sequential evaluation process.

At step one, the ALJ found that the child did not engage in substantial gainful
activity at any point since the application filing date: October 19, 2018 ("the relevant
period"). (Admin. Tr. 16; Doc. 13-2, p. 17). At step two, the ALJ found that, during
the relevant period, Plaintiff had the following medically determinable severe
impairments: anxiety, attention deficit hyperactivity disorder, learning disorder, and
autism spectrum disorder. (*Id.*). At step three, the ALJ found that, during the relevant
period, J.M.Z. did not have an impairment or combination of impairments that met
or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404,
Subpart P, Appendix 1. (*Id.*).

In determining whether J.M.Z. did not functionally meet a listing, the ALJ analyzed six functional domains. The ALJ opined that J.M.Z. had the following limitations:

- a marked limitation in acquiring and using information;
- less than a marked limitation in attending and completing tasks;
- less than a marked limitation in interacting and relating with others;
- no limitation in moving about and manipulating objects;
- less than a marked limitation in the ability to care for himself/herself; and
- no limitation in health and physical well-being.

(Admin. Tr. 18; Doc. 13-2, p. 19).

Responding to that opinion, Plaintiff claims the following four errors:

A. The ALJ Erred and Abused His Discretion By Failing to Find That Claimant Has An Impairment or Combination of Impairments That Functionally Equals The Severity of The Listings.

B. The ALJ Erred And Abused His Discretion In Failing To Properly Consider The Limitations And Functionally Equivalency In Looking At The Different Domains Of Function From The Minor Child's Identified Severe Impairments Including The Following: Anxiety, Attention Deficit Hyperactivity Disorder, Learning Disorder, And Autism Spectrum Disorder.
C. The ALJ Erred And Abused His Discretion By Finding That The Minor Child Had A "Less Than Marked Limitation In Attending And Completing Tasks."

D. The ALJ Erred And Abused His Discretion In Ignoring Countervailing Evidence.

(Doc. 16, p. 11).

Despite listing four claimed errors, Plaintiff states they "can be consolidated into one concise argument . . . the focal point of this appeal is the ALJ's finding that Claimant has less than a marked limitation in attending and completing tasks." (*Id.* at pp. 11-13).

B.   WHETHER THE ALJ ERRED IN FINDING J.M.Z. HAS A LESS THAN MARKED LIMITATION IN ATTENDING AND COMPLETING TASKS

Essentially, Plaintiff argues that the ALJ ignored favorable evidence in coming to his decision that J.M.Z. had a less than marked limitation in the attending and completing tasks domain. (Doc. 16, pp. 11-18). The Commissioner argues that Plaintiff is asking the Court to reweigh the evidence, an impermissible task for a district court. (Doc. 17, p. 9). To that end, the Commissioner highlights numerous instances where the record supports the ALJ's decision. I agree with the Commissioner; the ALJ's opinion is supported by substantial evidence. Before I explain why, I will briefly review what a "marked" limitation in the attending and completing tasks domain is, and how the ALJ analyzes whether a claimant has such a limitation.

1.   Standards for Finding a Marked Limitation in the Attending and Completing Tasks Domain

When analyzing whether a minor meets a listing, the ALJ must assess whether a minor has a less than marked, marked, or extreme limitation in six domains of functioning. Having a marked limitation:

"interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."

20 C.F.R. § 416.926a(e)(2).

At dispute here is whether J.M.Z. has a marked limitation in the attending and completing tasks domain. When analyzing this domain, the ALJ considers how well a minor "can focus and maintain [their] attention, and how well [they] begin, carry through, and finish [their] activities, including the pace at which [they] perform activities and the ease with which [they] change them." 20 C.F.R. § 416.926a(h). This domain as applied to school children is:

> (iv) School-age children (age 6 to attainment of age 12). When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a.

Examples of limitations within this domain include,

(i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
(ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.
(iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.
(iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
(v) You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a.(h)(3).

2.      Plaintiff's Argument Fails

Plaintiff argues that the ALJ failed to consider favorable medical, educational, and testimonial evidence in the record.[3] (Doc. 16, pp. 13-14). Additionally, Plaintiff contends that the ALJ "failed to resolve a conflict in the evidence" with respect to the favorable medical and educational evidence she identified. (*Id.* at p. 17). The Commissioner argues that the ALJ comprehensively addressed the evidence, and regardless, the ALJ is not obligated to discuss every piece of evidence. (Doc. 17, p.

---

[3] Plaintiff cites in his brief J.M.Z.'s and Plaintiff's testimony and contends that the ALJ ignored it or failed to resolve the differences between the record and the testimony. (Doc. 16, pp. 16-17). But the ALJ did consider their testimony. (Admin. Tr. 18-19; Doc. 13-2, pp. 19-20). Additionally, the ALJ did not err when he considered the medical and educational evidence of record and found that it did not align with the testimonial evidence. The ALJ's consideration of the medical and educational records will be discussed at length in this Section of the Memorandum Opinion.

Page 12 of 19

10). Here, I agree with the Commissioner. I'll discuss each type of evidence, and why the ALJ's decision is supported by substantial evidence.

a.    Medical Evidence

First, Plaintiff complains that the ALJ failed to address pieces of evidence. Plaintiff's contention is oblique, as she does not directly mention what pieces of evidence the ALJ failed to address. Nonetheless the Court assumes that she is referring to evidence mentioned in her brief, which includes specific pages of medical records, (Admin. Tr. 954; Doc. 13-16, p. 10; Admin. Tr. 990; Doc. 13-16, p. 46); a multidisciplinary evaluation, (Admin. Tr. 982; Doc. 13-16, p. 38; Admin. Tr. 999; Doc. 13-16, p. 55); and counseling records (Admin. Tr. 1007-1136; Docs. 13-17, 13-18, 13-19). However, the ALJ discusses all of these records *at length*. (Admin. Tr. 20-22; Doc. 13-2, pp. 21-23). And if Plaintiff is complaining that the ALJ did not discuss specific individual pages in the record, it is an unavailing challenge. *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.").

Next, Plaintiff contends that the ALJ failed to resolve a conflict in the evidence. However, Plaintiff is essentially claiming that other evidence shows that J.M.Z. has at least a marked limitation in the attending and completing tasks domain. But to any extent Plaintiff is asking the Court to reweigh the evidence *de novo*, it

will not. A federal court is limited to deciding whether substantial evidence supports the ALJ's findings. *Torres v. Barnhart*, 139 F. App'x 411, 413 (3d Cir. 2005).

Keeping that standard in mind, substantial evidence supports the ALJ's decision to find that J.M.Z. has a less than marked limitation in the attending and completing tasks domain. For example, in almost monthly treatment notes by Dr. Lorraine Wharton-Mohammed, J.M.Z.'s psychiatrist, she noted J.M.Z. was distractable,[4] but had fair judgment and insight, adequate concentration, age appropriate language, good recent and remote memory, and logical thought process. (Admin. Tr. 1007-67; Doc. 13-17, pp. 8-68). Further, on some instances, Dr. Wharton-Muhammed noted J.M.Z.'s focus improved. (Admin Tr. 1025; Doc. 13-17, p. 26) (June 1, 2019); (Admin. Tr., 1043, Doc. 13-17, p. 44) (March 12, 2019); (Admin. Tr. 1059; Doc. 13-17, p. 60) (December 18, 2018).

Plaintiff cites to some medical records that apparently support her claims. However, even that evidence is neutral for Plaintiff. For example, Plaintiff cites to a July 31, 2019 treatment note from Dr. Wharton- Muhammad that allegedly showed that Plaintiff needs prompts to complete chores. (Doc. 16, p. 14) (citing (Admin. Tr. 1018; Doc. 13-17, p. 19)). But in that note, Dr. Wharton-Muhammad noted that J.M.Z. only needs "some prompts." (Admin. Tr. 1018; Doc. 13-17, p. 19). Plaintiff

---

[4] Occasionally, Dr. Warton-Muhammad would find not J.M.Z.'s attention to be sufficient and not distractable. (Admin. Tr. 1042; Doc. 13-17, p. 43).

also cites to Dr. Ana Filippo's April 16, 2019 outpatient progress notes for the proposition that providers constantly note that J.M.Z.'s inattention, lack of focus, and hyperactive behaviors. (Doc. 16, p. 14) (citing (Admin. Tr. 1142-43; Doc. 13-19, pp. 31-32)). While true, Dr. Filippo's report also notes that J.M.Z. "focused primarily" on a building blocks house building exercise, and that she "has a number of strengths and clearly *some* difficulties with anxiety and focus." (Admin. Tr. 1143; Doc. 13-19, p. 32) (emphasis added). Additionally, in the same reports that Plaintiff cites, they note that J.M.Z. is making improvement in her goal of improving her attention. (Admin. Tr. 1136-38; Doc. 13-19, pp. 25-27).

Thus, it was not an error for the ALJ to use the medical evidence he cited to reject J.M.Z.'s and Plaintiff's testimony, or to find that J.M.Z. only has a less than marked limitation in the attending and completing tasks domain.

b.    Education Records

To begin, Plaintiff contends that the ALJ ignored pieces of evidence including specific pages of individualized education program ("IEP") records and a teacher questionnaire.  However, the ALJ discusses all of these records at length. (Admin. Tr. 19-22; Doc. 13-2, pp. 20-23). And if Plaintiff is complaining that the ALJ did not discuss specific individual pages in the record, it is an unavailing challenge. *Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.").

Page 15 of 19

Next, Plaintiff contends that the ALJ failed to resolve a conflict in the evidence. However, Plaintiff is essentially claiming that other evidence shows that J.M.Z. has at least a marked limitation in the attending and completing tasks domain. But to any extent Plaintiff is asking the Court to reweigh the evidence *de novo*, it will not. A federal court is limited to deciding whether substantial evidence supports the ALJ's findings. *Torres*, 139 F. App'x at 413.

In the ALJ's decision, he did not credit J.M.Z.'s or Plaintiff's testimony, in part, because:

> The claimant's education records are also inconsistent with Ms. DeJesus's and the claimant's allegations. The undersigned observes the claimant's academic performance is poor (B5E; B24F/5). However, she is in regular education with itinerant support (B5E). On an October 2019 IEP, the claimant's teachers observed the claimant "is very respectful to adults" (B13E/11). This IEP, as updated in January 2020, notes the claimant has age appropriate function in behavior, organization, daily living skills, self-help/safety, occupation therapy, physical therapy, and speech (B24F/12-13); implying the claimant has less than marked limitations attending tasks, interacting and relating others, and caring for herself. This IEP also indicates the claimant has strengths in average intellectual ability, visual-spatial ability, reading, written expression, and she is quiet, respectful, and follows school/classroom rules (B24F/13). During a September 2019 classroom observations, the claimant "was quiet and cooperative" and "engage[d] in schoolwork for a greater percentage than the peer observed for comparison" (B13E/12). During a November 2019 classroom observation, the claimant was active but asked questions, interacted with peers, and answered some questions correctly (B25F/7-8, 28-31).

(Admin. Tr. 22-23; Doc. 13-2, pp. 23-24).

Upon review of the record, I find the ALJ's reasoning on this matter to be supported by substantial evidence. The ALJ did not cherry pick adverse evidence from the record, as the educational record shows a student with issues, but is improving. For example:

- In a May 2018 IEP, J.M.Z.'s reading teacher notes that she works at a slow pace and extra time does not help her. (Admin. Tr. 360; Doc. 13-8, p. 7). Her functional performance in behavior, organization, daily life skills, self help and OT/PT/speech is age appropriate, but her social skills requires a behavioral support plan. (Admin. Tr. 363; Doc. 13-8, p. 9). It noted that J.M.Z. needs cues to begin work, and to stay on task. (Admin. Tr. 368; Doc. 13-8, p. 14).

- In an October 2019 reevaluation report, her science teacher thought she was "very distracted in class." (Admin. Tr. 393; Doc. 13-8, p. 39). Her language arts teacher noted that J.M.Z. "is very off task . . . and has trouble focusing in class." (*Id.*). However, when a school psychologist observed her during large group instruction in math, J.M.Z. was "quiet and cooperative with the substitute teacher's instructions . . . was engaged in schoolwork for a greater percentage than the peer observed for comparison . . . ." (Admin. Tr. 394; Doc. 13-8, p. 40).

- In an April 2019 IEP, J.M.Z. is described as "a quiet student in class who wants to do well in school. She is excited to share when she performs well. At times she can become off task, it is recommended that she is seated near a preferred peer or towards the front of the classroom to aid in her time on task." (Admin. Tr. 406; Doc. 13-8, p. 52). It was noted that J.M.Z. needs itinerant special education services. (Admin. Tr. 420; Doc. 13-8, p. 66).

Further, two of J.M.Z.'s teachers opined that J.M.Z. has mild to moderate limitations in attending and completing tasks. The teachers were asked to assess thirteen specific limitations attending and completing tasks limitation. Thomas Garner, a learning support teacher, opined that Plaintiff has "no problem" (1 on a 5 point scale) in seven of the activities, a "slight problem" (2/5) in five of the activities and a "obvious problem" (3/5) in working at a reasonable pace/finishing on time. (Admin. Tr. 267; Doc. 13-7, p. 26). Aaron Lucas, J.M.Z.'s science teacher, opined that J.M.Z. has "no problem" (1/5) in four of the activities, a "slight problem" (2/5) in two activities, a "obvious problem" (3/5) in six activities, and a "serious problem" (4/5) in one activity: completing class/homework assignments. (Admin. Tr. 456; Doc. 13-8, p. 103). The ALJ considered these opinions, but ultimately found them not persuasive because they were not supported, or consistent with the record. (Admin. Tr. 23; Doc. 13-2, p. 24).

In sum, I acknowledge that there is medical and educational evidence in the record that supports Plaintiff claims. However, it is not so overwhelming as to allow me to reweigh evidence. *See e.g., Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (explaining that evidence is not substantial "if it is overwhelmed by other evidence."). Thus, the ALJ's decision to find J.M.Z. has a less than marked limitation in the attending and completing tasks domain is supported by substantial evidence.

V.     CONCLUSION

Plaintiff's request for the ALJ's decision to be overturned and for the award of benefits be DENIED as follows:

(1) The final decision of the Commissioner will be AFFIRMED.

(2) Final judgment will be issued in favor of Kilolo Kijakazi.

(3) The Clerk of Court will be directed to close this case.


Date: August 29, 2022                    BY THE COURT

                                         *s/William I. Arbuckle*
                                         William I. Arbuckle
                                         U.S. Magistrate Judge